**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

| | |
|---|---|
| IN RE: | |
| **BARBARA LYNN CLAY** | **CASE NO. 10-53848** |
| DEBTOR | |
| **BARBARA LYNN CLAY** | **PLAINTIFF** |
| v. | **ADV. NO. 11-5003** |
| **CREDIT ACCEPTANCE CORPORATION** | **DEFENDANT** |

## MEMORANDUM OPINION

The issue presented to the Court in the parties' cross-motions for summary judgment is whether Defendant Credit Acceptance Corporation willfully violated the automatic stay provided in § 362(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, by allowing the continuation of a legal action where a complaint was mailed to the clerk one day before Plaintiff/Debtor Barbara Lynn Clay filed her petition in bankruptcy. In addition, if a willful violation is found, the parties dispute the proper award of damages.

The evidence of record, coupled with the applicable law, is sufficient to warrant a summary judgment in favor of Clay and against Credit Acceptance for Credit Acceptance's willful violation of the automatic stay.

The material facts are not in dispute.

On October 14, 2010, Credit Acceptance retained the law firm of Lloyd & McDaniel, PLC to handle collections on a retail installment contract with Clay. Lloyd & McDaniel mailed a demand letter to Clay and a co-obligor the following day. Clay

contacted the law firm to discuss settlement of the matter on October 25. When the negotiations failed, the law firm drafted a complaint and on December 8, 2010, issued checks for the filing fee and service on Clay and her co-obligor. The complaint, summons and checks were mailed to the Fayette Circuit clerk that same day.

Clay filed her petition under Chapter 13 of the Bankruptcy Code on Thursday, December 9, 2010. On Friday, December 10, 2010, Clay telephoned the law firm and spoke with a representative of the firm identified as Malcolm. Clay informed Credit Acceptance, through its retained counsel, of the bankruptcy filing.

The Fayette Circuit clerk docketed the collections complaint and issued a civil summons on Monday, December 13. Neither Credit Acceptance nor Clay took any further action in relation to the collection action on the retail installment contract following the December 10 phone call.

On January 3, 2011, Clay was served at her home with the civil summons issued by the Fayette Circuit Court. Clay notified her bankruptcy counsel after she was served, but no efforts were made by or on behalf of Clay to contact Credit Acceptance.

The complaint initiating this adversary proceeding seeking damages for violation of the automatic stay was filed on January 17. The bankruptcy clerk issued a summons on January 19, 2011. This summons was deposited in the U.S. mail for service on Credit Acceptance on February 2, 2011. Credit Acceptance received the summons and complaint on February 7. A Notice of Dismissal was mailed to the Fayette Circuit clerk on February 8, signed by the judge on February 11 and entered in the state court record on February 14, 2011.

Credit Acceptance's Motion for Summary Judgment was filed on April 13, 2011. (Doc. 19). Clay's summary judgment motion was filed on April 20, 2011. (Doc. 22). Responses and reply memoranda were filed and a hearing held on May 9, 2011. The matter was taken under submission at the conclusion of the hearing.

Under 11 U.S.C. § 362(k)(1), the individual seeking damages for a violation of the stay has the burden of establishing three elements by a preponderance of the evidence: (1) the actions taken were in violation of the automatic stay; (2) the violation was willful; and (3) the violation caused actual damages. *In re Barclay*, 337 B.R. 728 (B.A.P. 6th Cir. 2006). Under § 362(k) of the Bankruptcy Code, a finding of a willful violation of the automatic stay would entitle Clay to recover her actual damages.

Credit Acceptance contends the stay was not violated because it had no affirmative duty to prevent service of process when the act of mailing the complaint occurred before the petition was filed. Credit Acceptance obtained actual knowledge of the automatic stay as of Clay's call to counsel on December 10, 2010. Credit Acceptance insists the state court clerk's filing of the complaint, issuance of the summons and the later service on Clay were void actions having no legal effect. (Credit Acceptance Memo, Doc. 19, p. 7). Credit Acceptance specifically says the filing and service were void *ab initio*.

In support of its position that the service of summons was void *ab initio*, Credit Acceptance cites *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905 (6th Cir. 1993). The *Easley* court, however, examined the split in authority regarding whether actions taken in violation of the stay are void or merely invalid and voidable and determined that actions brought in violation of the stay are voidable. *Easley v. Pettibone Michigan*

*Corp.*, 990 F.2d at 910. The court explained the word "invalid" is a better choice as opposed to the word "void" to describe an action taken by a party at a time when the stay was in force. "Like the word 'void,' 'invalid' describes something that is without legal force or effect. However, something that is invalid is not incurable, in contrast to a void action which is incapable of being ratified." *Id.* at 909.

Credit Acceptance is correct that the filing and service of the complaint were both without legal force or effect at the time they occurred, but is incorrect that the actions were void *ab initio* because, under the authority in *Easley*, the actions were capable of being ratified. Credit Acceptance could have come to this court and sought an order annulling the stay which, if granted, would have ratified the filing and service. Similarly, in order to make the filing and service of the complaint void and incapable of being ratified an affirmative act was required.

Credit Acceptance's position that no action was required on either its part or Clay's is incorrect because the filing and service were not void actions, but merely voidable or invalid actions requiring some affirmative act by either Credit Acceptance or Clay to make the filing and service void. In this case, neither party filed a notice of abatement or otherwise made any effort to notify the state court that the petition in bankruptcy was filed.

It is axiomatic that the simple filing of a notice in the state court action, by either party, would put the whole world on notice that the collections complaint and service were without legal force or effect due to the bankruptcy filing. Unfortunately, for various reasons each party chose not to file a notice in the state court action. This adversary

4

proceeding results from those decisions and the Court must determine whether Credit Acceptance's inaction constitutes a willful violation of the automatic stay.

The bankruptcy automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 106 S.Ct. 755, 761 (1986). The automatic stay extends to both formal and informal actions against property of the estate and is intended to stop "the commencement or continuation, including the issuance or employment of process, of [an]… action or proceeding against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(1). The stay arises at the commencement of a bankruptcy case and is designed to give a debtor a breathing spell from her creditors. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417 (6th Cir. 2000).

The scope of the stay and the wording of § 362(a)(1) are sufficiently broad to place an affirmative duty on a creditor to take steps to halt the continuation of a judicial action, including the employment of process. Under the facts of this case, only Credit Acceptance was in the position to know all of these facts: (1) that the complaint and summons were deposited in the mail prepetition, (2) that Clay had filed a petition in bankruptcy thereby triggering the stay and halting the continuation of the collection action, and (3) that the state court clerk would receive and docket the complaint postpetition. Two additional facts, known only to Credit Acceptance at the time it received notice of the bankruptcy filing, are that absent any notification, the clerk would issue a summons for service on Clay and the sheriff would serve the summons; both being actions in clear violation of the automatic stay.

Credit Acceptance is not protected by the fact that it mailed the complaint and summons *before* the petition date. Credit Acceptance is responsible for the actions taken by other parties in the furtherance of its collection action to recover on its prepetition claim against Clay.

Under the Kentucky Rules of Civil Procedure, a civil action is commenced by the filing of a complaint and the issuance of a summons. KY. R. CIV. P. 3.01. The lawsuit against Clay *commenced* when the complaint was filed. After a complaint is filed the clerk shall issue the required summons and, *at the direction of the initiating party*, cause the summons and complaint to be served by an authorized person. KY. R. CIV. P. 4.01(1). The Fayette Circuit clerk was acting at the direction of Credit Acceptance when the summons and complaint were transferred to the Fayette County sheriff for service on Clay. All actions of the clerk and the sheriff were taken in the furtherance of Credit Acceptance's collection action.

The bankruptcy court in the Northern District of Ohio also found a creditor owed an affirmative duty to cease postpetition actions taken pursuant to prepetition directions when it considered similar facts in the case of *In re Hardesty*, 442 B.R. 110 (Bankr. N.D. Ohio 2010). In *Hardesty* the mortgagee commenced a prepetition foreclosure action and an "Order of Sale With Appraisal" was entered. *Id.* at 112. The debtor filed his petition in bankruptcy approximately one week later. His bankruptcy counsel filed a notice of bankruptcy in the foreclosure action and sent written notice to mortgagee's counsel. Less than two weeks after the petition date, three individuals conducted an appraisal of the debtor's real property in furtherance of the foreclosure action. *Id.* Debtor filed a complaint alleging a willful violation of the automatic stay and seeking

6

actual and punitive damages. The mortgagee, relying on state law, asserted that because it had no control over the actions of the three disinterested appraisers, no liability on its part should arise from their actions. *Id.* at 113. The court rejected this argument and found the mortgagee's lack of any direct control over the appraisers' action did not shield it from liability. The court stated,

> For purposes of § 362(a), a creditor, once it receives notice of a debtor's bankruptcy, has an affirmative duty to take reasonable measures to ensure that the collection activities, which it set in motion, are discontinued. The failure to abide by this affirmative duty may result in a stay violation and the imposition of damages.

*In re Hardesty*, 442 B.R. 110, 114 (Bankr. N.D. Ohio 2010).

Another court addressing whether a creditor's failure to act constituted a willful violation of the stay provides,

> Creditors and their counsel are not allowed to sit by and watch the litigation they have commenced proceed by shifting responsibility to local authorities charged with collecting judgments obtained through their efforts. The provisions of the automatic stay place the responsibility to discontinue any pending collection proceedings squarely on the shoulders of the creditor who initiated the action.
>
> Creditors must take the necessary steps to halt or reverse any pending State Court actions or other collection efforts commenced prior to the filing of a bankruptcy petition, including foreclosure of a mortgage or a judgment lien and, thereby, maintain, or restore, the status quo as it existed at the time of the filing of the bankruptcy petition.

*In re Johnson*, 262 B.R. 831, 847-48 (Bankr. D. Idaho 2001) (Internal citations omitted.).

Once a creditor commences a legal proceeding, the creditor controls the process. A creditor may not abdicate responsibility for actions taken at its direction by other parties in furtherance of the legal proceeding. *In re Hardesty*, 442 B.R. at 115. The broad protections of the automatic stay do not allow inaction on the part of a

creditor in a position to halt the continuation of a civil action to escape the effect of the stay and the liability for any violations thereof.

Clay has met her burden of proof on the all elements of 11 U.S.C. § 362(k)(1). Clay has established by a preponderance of the evidence that the inaction of Credit Acceptance resulted in a violation of the automatic stay and the violation was willful. Once a willful violation is established, an award of damages is mandatory under § 362(k)(1), so long as there is a resulting injury. *In re Harris*, 374 B.R. 611, 616 (Bankr. N.D. Ohio 2007). The violation constitutes an injury under 11 U.S.C. § 362(k)(1) thereby entitling Clay to recover her actual damages. *Henderson v. Auto Barn Atlanta, Inc.*, 2011 WL 482827, at *7 (Bankr. E.D. Ky. Feb. 7, 2011).

In addition, § 362(k)(1) requires the imposition of attorneys fees on a creditor found to have willfully violated the automatic stay. *In re Harris*, 374 B.R. at 616. The attorney fees must be reasonable. *Id.* citing *In re Roman*, 283 B.R. 1, 11-12 (B.A.P. 9th Cir. 2002). In its present form, the record lacks any indication of the specific amount of damages sought in this action.

The Court shall enter a separate order of judgment consistent herewith and shall direct the parties to supplement the record regarding damages.

Copy to:
J.D. Kermode, Esq.
Gregory L. Taylor, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.*



**Signed By:**
*Joseph M. Scott, Jr.*
**Bankruptcy Judge**
**Dated: Wednesday, May 11, 2011**
(jms)